■ RICHARD F. MURRAY, Appellant, v SYSCO CORPORATION, Respondent. [710 NYS2d 179] —Lahtinen, J. Appeal from that part of an order of the Supreme Court (Best, J.), entered September 23, 1999 in Fulton County, which granted defendant's motion for summary judgment dismissing the first cause of action of the complaint.

Plaintiff began working for defendant as a district sales manager in April 1993 as a result of defendant's acquisition of the business of plaintiff's former employer. On April 23, 1993 plaintiff signed a sales representative's agreement (hereinafter the agreement) with defendant which, *inter alia*, provided that defendant could terminate plaintiff's employment immediately with cause or without cause upon proper notice and contained restrictive provisions prohibiting plaintiff from soliciting business from defendant's customers and divulging confidential information for a period of one year following termination of employment. In December 1994 plaintiff began to develop problems with his right knee which resulted in outpatient surgery on April 7, 1995. Defendant terminated plaintiff's employment on May 5, 1995 claiming that plaintiff's sales district figures continued to lag and he was unwilling to make any effort to improve them. Plaintiff claims that defendant discriminated against him because of his knee injury and terminated his employment without cause on May 1, 1995 without the required two-week notice prior to his dismissal.

On September 5, 1995 plaintiff began to work for Rykoff-Sexton (hereinafter Rykoff), a competitor of defendant. Plaintiff's employment with Rykoff required the creation of a new sales district in the Saratoga-Albany area where plaintiff was similarly employed by defendant. Upon learning of plaintiff's new employment and expecting a loss of customers to plaintiff's new employer because of plaintiff's solicitation of his old customers and use of confidential information acquired during his employment with defendant, defendant wrote to Rykoff on October 4, 1995 informing it of the nonsolicitation and confidentiality provisions of the agreement plaintiff signed while employed with defendant and requested Rykoff's help in enforcing those provisions of the agreement. Rykoff responded to defendant's October 4, 1995 letter on October 16, 1995 indicating that it "fully intends to comply with these terms im-

mediately." Rykoff's general manager requested that plaintiff have his attorney clarify the matter by obtaining defendant's position in writing. On December 1, 1995, not having received defendant's position in writing from plaintiff, experiencing poor sales in plaintiff's area and fearing legal action, Rykoff ceased its operation in its newly created sales area and offered to transfer plaintiff to its Norwood, Massachusetts, branch. Plaintiff refused the offer to relocate and ended his employment with Rykoff.

On July 1, 1996 plaintiff commenced an action in Federal court alleging three causes of action based on (1) a violation of the American with Disabilities Act (hereinafter ADA), (2) a violation of Executive Law § 296, and (3) tortious interference with his contract of employment with Rykoff. Plaintiff's ADA claim was premised on his allegation that defendant terminated his employment because of a disability resulting from his knee injury. Defendant's motion for summary judgment in the Federal court action was granted and plaintiff's Federal ADA claim was dismissed. When the Federal court refused to exercise supplemental jurisdiction over the State law claims, plaintiff's Federal complaint was dismissed in its entirety.

Plaintiff commenced this lawsuit in Supreme Court alleging causes of action for tortious interference with contract and a violation of Executive Law § 296. Thereafter, defendant again successfully moved for summary judgment and plaintiff now appeals from so much of Supreme Court's order as dismissed his claim for tortious interference with contract.

In order to prevail on his claim that defendant tortiously interfered with his contract of employment with Rykoff, plaintiff must show (1) the existence of a valid contract between himself and a third party, (2) defendant's knowledge of that contract, (3) defendant's intentional inducement of the third party to breach that contract, and (4) damages (*see, Gill Farms v Darrow*, 256 AD2d 995, 997; *Rosario-Suarz v Wormuth Bros. Foundry*, 233 AD2d 575, 577). Where the contract of employment between plaintiff and a third party is terminable at will, which is the case here, plaintiff must also show that defendant employed wrongful means, such as fraud, misrepresentation or threats to effect the termination of employment (*see, Guard-Life Corp. v Parker Hardware Mfg. Corp.*, 50 NY2d 183, 194). Additionally, to the extent that defendant acted to protect its business in the Saratoga-Albany area, its action in sending the October 4, 1995 letter was economically justified and required plaintiff to make a showing that defendant's alleged tortious interference was motivated by

malice or employed fraudulent or illegal means (see, *Foster v Churchill*, 87 NY2d 744, 750; *Rosario-Suarz v Wormuth Bros. Foundry, supra,* at 577).

Plaintiff has failed to make the required evidentiary showing in opposition to the motion. The only evidence of wrongful means or malice is the October 4, 1995 letter to Rykoff by defendant's counsel. The letter, in its most ominous tone, refers to plaintiff's prohibited activities and states "such activities reflect badly on Rykoff—Sexton, Inc. and subject it to the risk of incurring substantial legal liability." It is questionable whether the letter can be viewed as an intentional inducement of Rykoff to breach its at-will employment with plaintiff but it is without question that the letter falls far short of establishing the additional necessary elements of malice or illegality, especially in light of plaintiff's admission that the letter contained no false statements. Plaintiff's claim that malice can be inferred from the fact that defendant knew or should have known that the restrictive provisions of the agreement were unenforceable is unsupported by the record and he has failed to offer any other evidence that defendant's letter "was motivated by malice, personal gain or a desire to injure plaintiff" (*Rosario-Suarz v Wormuth Bros. Foundry, supra,* at 577).

Finally, plaintiff's claim that he should be allowed additional discovery pursuant to CPLR 3212 (f) is without merit. Other than the conclusory statements of plaintiff's counsel, there is nothing set forth in the affidavits submitted in opposition to defendant's motion that persuade this Court that facts essential to justify opposition to defendant's motion may exist.

Cardona, P. J., Carpinello, Graffeo and Rose, JJ., concur. Ordered that the order is affirmed, with costs.